*In re* ARÍSTIDES BLANCO COLÓN, Respondent.

No. D-65-1.      Decided May 23, 1966.

*J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for The People. *Ramírez, Tirado & Marchand,* and *Jorge Segarra Olivero* for respondent.

PER CURIAM: In compliance with the order entered by this Court on January 22, 1965, the Solicitor General preferred the following charges against Arístides Blanco Colón, respondent herein:

*"First Charge*

"Arístides Blanco Colón, respondent herein, observed immoral and improper conduct in sending to Superior Judge Quintín Morales Ramírez—before whom he tried his cases and a case was submitted for rendition of judgment in which the attorney was a party defendant—the sum of $200, as a gift, with which the magistrate was to purchase alcoholic beverages

for his own use. The said sum was delivered to the said magistrate on June 2, 1964, while he was in the discharge of his duties, in open court, in the Ponce Part of the Superior Court.

### "Second Charge

"Arístides Blanco Colón, respondent herein, observed unlawful, improper, and censurable conduct in refusing to issue to one of the executing parties of deed No. 187, of segregation and sale, executed before the former on June 25, 1960, a certified copy thereof, as a result of which the aggrieved party was compelled to file a judicial action which respondent, as defendant therein, used as an excuse to delay performance of his duty as a Notary Public."

In the answer to the first charge respondent admitted (a) that he sent to Quintín Morales the sum of $200 for the aforesaid purpose, but added that such action was prompted by the friendly relations existing between them, and (b) that the delivery was made while the said magistrate was presiding at a session of the Superior Court, Ponce Part, notwithstanding his specific instructions to make the delivery at his residence on Castillo Street of Ponce; and he denied his having knowledge that at the time of the occurrence of the facts recited Judge Morales had under consideration a civil action in which Blanco Colón was the defendant. Regarding the second charge, he admitted his refusal to issue a certified copy of deed No. 187 of June 25, 1960, at the request of the interested party, and that as a result of his refusal the said party filed a judicial proceeding in order to obtain it; and he denied the other facts stated.

In May 1965 respondent requested, and the Solicitor General agreed, that the matter be submitted on the basis of the investigation record made by the Solicitor General and of the disclosures of the record of civil action CS-63-951 of the Superior Court, Guayama Part. We so ordered.

A reading of the testimony of the witnesses produced by the Solicitor General shows that respondent actually sent on

June 2, 1965, to Quintín Morales, an envelope containing the sum of $200 in cash. Judge Morales had been presiding the Guayama Part of the Superior Court, and during that period respondent had practiced quite frequently before that magistrate. It seems proper to state that Mr. Blanco did not know that the decision of a case in which he was the defendant had been referred to Judge Morales, since the hearing thereof had been held before another judge and from the record it did not appear that an order had been entered nor notified referring the case to him. At the time of the occurrence of the facts object of this charge there was only pending before Judge Morales an action of filiation in which respondent represented the plaintiff, and which, according to the magistrate's testimony, he had already decided and in which only the opinion and judgment in final form was pending. Under these circumstances, we have well-founded doubts that respondent's purpose was to influence Judge Morales to accord him favorable treatment in pending judicial matters. Nonetheless, respondent's actions disregarded the provisions of Canon 3 of the Canons of Professional Ethics, which in part reads "Marked attention and unusual hospitality on the part of a lawyer to a Judge, uncalled for by the personal relations of the parties, subject both the Judge and the lawyer to misconstruction of motive and should be avoided." Such conduct jeopardized the position of the judge "who must be scrupulously careful to avoid such acts as might reasonably tend to create the impression that his social or business relations or friendships influence his judicial determinations in any manner." Respondent himself has realized the extent and significance of his fault.[1]

---

[1] In his brief submitted to this Court, the respondent alleges through his attorneys:

"Respondent wishes to state that he regrets his having acted inadvertently and without pondering on the consequences of his acts, on the motives thereof, and he so admitted it ever since the nature of his

Regarding the second charge, the evidence shows that respondent, without any valid excuse whatever, refused to issue a certified copy of a deed executed before him as a notary public. It cannot be asserted, however, that his action was prompted by malice, but rather by his lack of knowledge and ignorance of his duties as such notary.

The first charge having been essentially proved, and considering the seriousness of respondent's acts and our duty to maintain the public faith in those who dispense justice, we decree respondent's suspension from the practice of the legal profession for a term of one year and order that his name be stricken from the rolls of attorneys.

Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra did not participate herein.

action was first questioned. . . ."

    .    .    .    .    .    .    .    .

"In assuming responsibility for the consequences of his conduct, respondent again deplores his observance of such conduct because of the misinterpretations to which the bare facts, cleansed of the element of intention, may give rise, and throws himself at the mercy of this Court for any corrective, if any, which it may deem proper under the circumstances pointed out, not without first praying this Court for indulgence and leniency toward his conduct, considering his clean 13-year record of professional practice and that as a result of the initiation and prosecution of this proceeding he has realized his error and will guard against the repetition of such conduct."